(No. 33056.—

Florence N. Bradley, Appellant, *vs.* Jesse A. M. Bradley *et al.,* Appellees.

*Opinion filed May 24, 1954.*

JENKINS, OLSEN & CANTRILL, of Springfield, (HAROLD M. OLSEN, of counsel,) for appellant.

PROVINE & MILEY, and HERSHEY & BLISS, both of Taylorville, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Christian County denying plaintiff-appellant, Florence N. Bradley, partition of an undivided one-half interest in and to 480 acres of real estate more or less, located in said county, and other relief consistent with the partition prayed. The appeal is directed to this court because a freehold is involved.

Leander Bradley, whose will is involved here, died testate in 1923 leaving his widow, Mary E. Bradley, since deceased, and two sons, Jesse A. M. Bradley and Charles L. Bradley. Appellant is the widow of Charles, who died in 1948, having married him in 1918. No children were

born to their union, however Charles was survived by a daughter from a previous marriage, now Lucille B. Tedrow. She and Jesse A. M. Bradley were made defendants to appellant's suit and are the principal appellees in this court.

Leander Bradley executed his last will January 1, 1921. By its terms he devised the real estate in question to his wife, Mary, for her life, and the remainder as follows: "* * * subject to said estate given to my wife for her life if she survives my decease, I give and devise to my son Jesse A. M. Bradley, his heirs and assigns in his own right and absolutely the undivided one-half of said real estate, and I give to him, said Jesse A. M. Bradley, and to his heirs and legal representatives and successors all in trust the other undivided one-half of said real estate upon the trust and for the uses and purposes hereinafter stated."

After providing for the management and control of the trust *corpus* by the trustee, the will then stated: "Said trust estate in said Jesse A. M. Bradley, his successors and assigns, shall continue during the life of said Charles L. Bradley, *or until he shall procure settlement or settlements and acquittances from all his indebtedness now existing or that shall exist against him until the expiration of said trust all so that said indebtedness shall not become or any of it shall not become a charge or lien against said land held in trust or against said personal property held in trust and if and when said Charles L. Bradley shall make said settlements and obtain said acquittances and be free from all his indebtedness so that the same shall not be a charge or lien upon said lands or property* then said Trustee or successors in trust shall make, execute and deliver to the said Charles L. Bradley a good and sufficient deed conveying to him in fee all the said lands and tenements and property real and personal then on hand so held in trust and said trust shall then cease and the Trustee be discharged." (Italics ours.)

In the event Charles L. Bradley died during the existence of the trust leaving a child, children or descendants of his body surviving him, item 6 of the will instructed the trustee to convey the trust *corpus* to the "right heirs at law of said Charles L. Bradley," and if Charles L. Bradley died during the existence of the trust not leaving him surviving a child, children or descendants of his body, the trust *corpus* was then bequeathed to the trustee, Jesse A. M. Bradley, to be his in fee discharged of the trust.

When Charles died in 1948, no conveyance of the property had been made to him by the trustee and thereafter the said trustee conveyed Charles's share in the land in dispute to Lucille B. Tedrow, to the exclusion of appellant. This action has followed.

In seeking partition, the contentions of appellant are twofold and alternative. While conceding that her husband was heavily in debt at all times from the death of the testator until 1944, appellant first contends that he acquitted himself of his indebtedness through the medium of bankruptcy proceedings in 1944 and accumulated no further indebtedness between that time and his death in 1948, thus entitling him to a conveyance from the trustee which was demanded and refused. Secondly, and in the alternative, appellant contends that because Charles left him surviving a child, Lucille B. Tedrow, thus obligating the trustee to convey to the "right heirs at law" of Charles, appellant, being an heir-at-law, is entitled to a conveyance from the trustee of a one-third in an undivided one-half of the property so devised by the testator.

Appellant's first contention presents a question of fact which may be disposed of succinctly. Apart from the fundamental precept often enunciated by this court, that findings of fact by the chancellor, who has seen and heard the witnesses, and who is the best judge of their credibility, will not be disturbed unless obviously against the manifest weight of the evidence, it is apparent, as the

chancellor found, that appellant failed completely to sustain the burden of proving her husband had met the conditions imposed by the testator. Arrayed against appellant's virtually uncorroborated testimony that her husband was solvent after his discharge in bankruptcy until his death is the following formidable and undisputed testimony: (1) In October, 1944, appellant filed a sworn complaint for divorce against her husband and alleged therein that he was indebted to her in an amount of $1400; (2) appellees introduced into evidence an accounts payable ledger in Charles L. Bradley's ledger book showing various amounts owing from him to the appellant from March, 1946, until the date of his death; (3) cancelled checks of the appellant payable to Charles L. Bradley were introduced into evidence, and it was shown that the appellant had written the word "loan" on the face of the said checks; (4) documentary evidence was introduced to demonstrate that Charles L. Bradley had kept a $300 loan upon his automobile almost continuously from 1938 until the time of his death; (5) a note in the amount of $10,000 executed in 1926 by Charles L. Bradley and payable to his mother, Mary L. Bradley, was introduced into evidence, and testimony was given that said note had never been paid; (5) appellant and her husband were comakers of various real-estate mortgage notes in various amounts, some of which had not been paid at Charles L. Bradley's death.

It is our opinion that it emerges clearly from the foregoing, that Charles, from the date of his discharge in bankruptcy in 1944 until the date of his death, continued heavily in debt, if not actually insolvent, and, therefore, under the terms and conditions of his father's will, was not entitled to a conveyance from the trustee. Indeed, though the evidence is in direct conflict, it would appear that Charles made no effort to show fulfillment of the conditions during his lifetime or took any formal action to acquire a deed. We conclude that the chancellor cor-

rectly held that appellant failed to show by a preponderance of the evidence that her husband, from 1944 until his death, had obtained settlements or acquittances "from all his indebtedness so that the same shall not be a charge or lien against said lands or property" held in trust.

As a consequence of the above, we find it unnecessary to decide whether or not the bankruptcy proceeding constituted an acquittance or settlement of Charles L. Bradley's indebtedness prior to the proceeding. It should be noted, however, that in the ordinary and usual sense of the words, an indebtedness can neither be "acquitted" nor "settled" by a bankruptcy proceeding.

Appellant's second contention is, that since Charles L. Bradley died leaving a child, the trustee was, under the provisions of paragraph 6 of Leander Bradley's will, obligated to convey the property in question to the "right heirs at law" of Charles L. Bradley, and that she, being an heir-at-law at the time of her husband's death, is entitled to a conveyance from the trustee of a one-third interest in an undivided one-half of said property.

This contention may be resolved by applying thereto the basic rule of will construction, *e.g.,* that the true intention of the testator is to be given effect. In turn this true intention of the testator is to be found by an examination of the language used in the will and by a consideration of the will in all of its parts, constantly keeping in mind the plan of the testator as expressed by the entire will. *Heisen* v. *Ellis,* 247 Ill. 418; *Leary* v. *Kerber,* 255 Ill. 433; *Mettler* v. *Warner,* 243 Ill. 600.

In this case, the testator's plan relating to the property here involved is set forth in the following language of the will:

"Item 6. * * * And in case of the death of said Charles L. Bradley during existence of this trust leaving a child, children or descendants of his body, him surviving then the said trustee shall convey all of said lands and personal property held in trust to the

right heirs at law of said Charles L. Bradley, but if the said Charles L. Bradley shall die during the existence of this trust leaving surviving his decease no child, children or descendants of his body, then and in that case I give and bequeath all of said trust property to the said trustee Jesse A. M. Bradley to be his in fee and absolutely, discharged of said trust. * * *

"Item 7. In event of the death of either of my sons Charles L. Bradley or Jesse A. M. Bradley prior to my decease leaving surviving my decease no child, children or descendants of his body then and in that event I give and devise, subject to the life estate given to my wife and the annuity given to my daughter, to said Jesse A. M. Bradley (in the event of the death of Charles L. Bradley before my decease) all of the said property given to him in trust for said Charles L. Bradley; and in event of such death of Jesse A. M. Bradley before my decease then I give and devise to a trustee to be appointed by the proper Court all of the property real and personal herein above mentioned given to said Jesse A. M. Bradley in his own right and as Trustee, all in trust however upon the trusts, uses and purposes above mentioned."

From the above, it would appear that there can be no doubt as to the intention of the testator. Item 7 states clearly that if Charles died prior to the death of the testator leaving no child who survived the testator, the property was to go to the testator's other son, Jesse. Conversely, if Jesse died prior to the death of the testator leaving no child, Jesse's undivided one-half interest in the property was to be held in trust for the benefit of Charles. In both instances Charles L. Bradley's widow and Jesse's widow, if any, were definitely excluded. In item 6 of the will the testator provides that if Charles survived the testator, but himself dies during the existence of the trust leaving no child, children or descendants, the trust property is to go to Jesse, discharged of the trust. Again the widow of Charles is excluded. Hence, it becomes apparent that when the testator directs that in the event Charles dies during the existence of the trust, leaving a child, children or descendants, the trust property is to be conveyed by the trustee to the "right heirs at law" of Charles, he is referring to those lineal descendants of Charles who would be Charles's heirs upon Charles's death. This con-

clusion becomes inescapable when it is recognized that as of the date of the execution of the will, the appellant was not an heir of Charles as to real estate. Prior to the amending of the Statute of Descent (Laws of 1923, p. 325,) the widow did not inherit any portion of the real estate where there were surviving children, but took an estate of dower. Thus, it would appear evident beyond cavil that the testator's broad plan was to devise his property to his descendants only, and to exclude appellant. Any other interpretation would, in our view, be inconsistent with the plan and expressed intent of the testator.

Appellant relies heavily upon *Harris Trust & Savings Bank* v. *Jackson,* 412 Ill. 261. In that case this court held that the phrase "lawful heirs" as used in the context of the will there involved, included the widow. However, that holding was predicated upon the fact that there was nothing within the four corners of the will itself to evidence a contrary intent and, as a result, there was followed the familiar rule of construction that formal words will be given their technical sense if the testator's actual intention is in doubt or cannot be ascertained from the language of the will itself. Nevertheless, at page 266 of the *Harris Trust case,* we said: "The cardinal rule of testamentary construction to which all other rules must yield is to ascertain the intention of the testator from the will itself and to effectuate this intention, unless contrary to some established rule of law or public policy. * * * However difficult its application may be in particular fact situations, this statement is no empty platitude." In the present case, where the testator's intention is free from doubt, it is the latter rule which must be applied.

The decree of the circuit court of Christian County is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.