**In the Matter of Estate of Sidney Ginsberg, Deceased. Robert H. Garrett, as Executor, Petitioner-Appellee, v. The Aurora Foundation, as Trustee, Respondent-Cross-Appellant, and General J. V. Dillon, Respondent-Appellant.**

**Gen. No. 10,773.**

Second District.

January 24, 1955.

Released for publication February 11, 1955.

J. V. Dillon, of Washington, D. C., and Jerome J. Downey, of Rockford, for respondent-appellant; Reid, Ochsenschlager & Murphy, of Aurora, for respondent-cross-appellant; Frank R. Reid, Jr., and Robert B. Hupp, both of Aurora, of counsel.

No briefs filed for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Sidney Ginsberg died testate leaving a last will and testament which was duly admitted to probate in the

Kane county probate court on April 17, 1951. In substance, the will directed the entire estate to be given fifty per cent each to the Aurora Foundation, a tax-exempt nonprofit corporation, and to one General J. V. Dillon, a schoolmate and friend not related to the testator. Any portion not distributable for any reason to one beneficiary, was given to the other, but it was provided that Dillon must survive distribution in order to take.

After admission of the will to probate, the executor petitioned the county probate court for an order of redistribution because of a tax dispute having arisen between the two beneficiaries. The Illinois inheritance tax was imposed, of course, upon the legacy and devise to Dillon as was the federal estate tax, and the federal income tax was due upon income received by the estate subsequent to the testator's death. The Foundation contended that all these taxes should be paid and charged by the executor against the share of Dillon prior to distribution; whereas Dillon contended that the taxes should be paid by the executor as an expense of administration prior to distribution and charged equally against the share of each beneficiary.

The only clause of the will relevant to taxes is quoted herewith, to-wit:

"I hereby direct that any and all estate, inheritance or succession taxes or death duties (by whatever name called), that may be imposed upon any of the legacies set forth in this Will shall be paid by the respective legatees, devisees or beneficiaries, and that said taxes shall not be paid out of the residue of my estate."

The Kane county probate court, upon said petition and answers of both beneficiaries, ordered that the Illinois inheritance tax imposed upon Dillon's share, and the federal estate tax as finally assessed, be paid by the executor from the assets distributable to Dillon and charged against his share prior to distribution; but

140

that the federal income tax upon income received subsequent to the testator's death be paid by the executor from the corpus of the estate as an expense of administration prior to distribution to the beneficiaries, and charged equally against the shares of both the Foundation and of Dillon.

From this order both the Foundation and Dillon appealed to the circuit court of Kane county, which heard the consolidated cause de novo and decreed the same as had the probate court. In its decree the circuit court found that:

(a) The Illinois inheritance tax was imposed by the State upon the legacy and devise of Dillon, was properly payable from assets distributable to him, and that the amount so paid should be charged against his share prior to distribution;

(b) The tax-exempt share passing to the Foundation was deductible from the gross estate in computing the net estate subject to the federal estate tax; that Dillon's share of the net estate was subject to the federal estate tax, and that the testator intended such taxes to be paid by the beneficiary whose share gave rise to the tax, i. e. Dillon;

(c) Nothing in the will referred to the federal income tax, and that such tax therefore was an expense of administration to be paid by the executor from the corpus prior to distribution and charged equally to the beneficiaries.

From that decree the Foundation here appeals only the holding as to federal income tax, and Dillon appeals from the rulings as to Illinois inheritance tax and federal estate tax.

It appears to be Dillon's contention, or theory, that the testator, in bequeathing fifty per cent of the entire estate to each of the two appellants, intended to preserve equality of participation by the beneficiaries un-

disturbed by payment of any death duties. He argues that article nine of the will refers only to taxes imposed upon legacies, and should not be deemed to refer to the federal estate tax which is not a tax on a legacy but rather a tax on the transfer of property at death. He admits that the Illinois inheritance tax would fall on him alone, were it not for article nine of the will; but he contends that article nine does not refer to this tax either, because it directs such taxes to be paid by the respective legatees, and that the testator's intention was for both legatees to share this tax.

The Foundation argues that under article nine of the will, Dillon's share should bear the entire federal income tax, since such tax could only have been paid on behalf of Dillon and as a tax advantage to him.

It is not disputed by either beneficiary that, were article nine not in the will, estate taxes would be an expense of administration, prior to distribution of the residue to the two beneficiaries. However, the testator by article nine has specifically provided otherwise as to certain types of taxes, and it is our duty to give effect to this intention. With regard to the federal estate tax, the testator's intention seems clear: such a tax is a "death duty" by whatever name called, whether levied on a legacy or on transfer of property at death, and was imposed upon one of the legacies, i. e., Dillon's, by reason of the Foundation's being tax-exempt. We regard the words "any of the legacies" in article nine as clearly referring to any one or both of the two legacies.

With regard to the Illinois inheritance tax, the intention of the testator in article nine also seems clear. The provision therein for inheritance taxes to be paid by the "respective legatees" clearly refers back to "any of the Legacies," and can only mean either one or both of the legatees. Nowhere in the entire will does the testator use the word "equal," and the words "any" and "respective" in article nine negative any presump-

tion of tax-sharing by the beneficiaries. To hold otherwise would unnaturally distort the language. Bradley v. Bradley, 3 Ill.2d 58; Monarski v. Greb, 407 Ill. 281.

■ The testator provided for each beneficiary to receive fifty per cent of his estate, but that any death taxes imposed on any share should be paid by the respective beneficiary of that share. Article nine makes no provision for sharing of taxes by the beneficiaries. We hold, therefore, that the decree of the circuit court correctly directed the executor to pay from and charge against the share of Dillon, prior to distribution, the federal estate tax and Illinois inheritance tax due on that share.

■ With regard to the federal income tax upon income received by the estate subsequent to the death of the testator, article nine of the will does not apply. Article nine makes no mention of income taxes, and such taxes cannot be defined, or construed as "death duties." Thus, the only remaining question is whether income taxes are an administration expense. The Foundation contends that under the Internal Revenue Code (Title 26, U. S. C. A. sec. 162 (b)), if any estate income becomes payable to the beneficiary, regardless of whether it is actually distributed, the income tax liability is that of the beneficiary, and that payment thereof should not be an administration expense. The further suggestion is made that, because the executor reported and paid a tax on Dillon's share of estate income as a tax-saving device for him by reducing the personal income Dillon would otherwise have to report, it would therefore be reasonable to charge the tax so paid to Dillon's distributive share, since the tax-exempt Foundation derived no benefit from the transaction and even suffered its share to be reduced by half of the tax so paid.

The provision of the Internal Revenue Code above cited, refers only to computation of net income of an

143

estate and deduction credits allowable from estate income. This provision reduces the net taxable income of the estate. It is undisputed that the estate is a separate taxable entity. In the present case, the executor had a statutory duty to pay federal income tax upon the estate income whether actually distributed to the beneficiaries during that year or not. As distinguished from the Illinois inheritance tax, for example, which imposes a statutory duty chargeable to the beneficiaries' share, the federal income tax imposes a statutory duty upon the estate which the personal representative must perform.

██ Where an estate's personal representative is required to perform a statutory duty, the expense of performing that duty is one of administration and a charge against the corpus of the estate. This has been decided with respect to federal estate taxes (The People v. Pasfield, 284 Ill. 450; The People v. Northern Trust Company, 289 Ill. 475), and for purposes of estate administration expense we do not regard federal income taxes as being in any different category. We have been cited no authority to the contrary.

The possibility that either appellant may have incurred some advantage or disadvantage incident to charging federal income taxes as an expense of administration, we regard as immaterial. Accordingly, the decree of the circuit court was correct in directing the executor to pay the federal income tax upon Dillon's share from the corpus as an administration expense, and to charge the same equally to both beneficiaries prior to distribution.

Decree affirmed.