RHODE ISLAND HOSPITAL TRUST COMPANY, *Ex'r vs.*

CATHERINE BARTOW SANDERS *et al.*

JULY 23, 1956.

PRESENT: Flynn, C.J., Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is a bill in equity for the construction of the last will and testament of Emily Coddington Williams, late of the city of Newport in this state, deceased, and for instructions relative thereto. When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with general laws 1938, chapter 545, §7.

A stipulation was filed by all the parties hereto that for the purposes of this case the facts set forth in the bill of complaint are true. None of the parties is a minor and all were duly represented by counsel. The following facts among others appear from the pleadings and exhibits.

The testatrix died testate on August 8, 1952, a resident of the city of Newport. Her last will and testament, dated January 12, 1950, was duly probated in the probate court of that city and the Rhode Island Hospital Trust Company was appointed executor of her estate. For federal estate tax purposes the gross estate was valued in excess of $12,000,000.

The questions raised concern clauses First and Seventh of the will. Clause First provides:

"First: I direct my executor, hereinafter named, to pay from my residuary estate all my just debts, funeral expenses and expenses of administration, including as part of such expenses of administration all legacy, estate, inheritance and succession taxes of every kind."

In the next following clauses the testatrix made certain provisions for her burial, several specific bequests of personal belongings and sums of money, and then in clause Seventh she provided for the division of her residuary estate as follows:

"Seventh: I direct that all the rest, residue and remainder of my estate, both real and personal, of every kind, nature and description and wheresoever situated, of which I may die seized or possessed and whensoever and howsoever acquired or over which I may have any power of appointment or disposition whatsoever, be divided into twenty (20) equal parts or shares, and I give, devise and bequeath the same as follows * * *."

Four of the beneficiaries named in the residuary clause were individuals and six were charitable organizations. The Newport Reading Room, not being a charitable organization, will be treated here as one of the individuals. We shall refer to the beneficiaries respectively as the noncharitable group and the charitable group. Thus the number of shares given to the noncharitable group totals sixteen and one-half twentieths, or 82.5 per cent, and the number of shares given to the charitable group totals three and one-half twentieths, or 17.5 per cent, of the whole residuary estate. This latter group qualifies for exemption under sec. 162 (a) of the United States Internal Revenue Code of 1939 (53 Stat. 66). However, the noncharitable group does not so qualify.

Section 162 (a) of that code provides that in computing the net income of an estate subject to federal income tax there shall be allowed as a deduction, without limitation, any part of the gross income which, pursuant to the terms

of the will, during the taxable year is paid or permanently set aside for the purposes and in the manner specified in sec. 23 (o), or which is to be used exclusively for religious, charitable, scientific, literary or educational purposes.

Section 162 (c) of the 1939 Int. Rev. Code (53 Stat. 66) provides that in the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate the amount of the income of the estate for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

On or about June 15, 1954 the executor as fiduciary filed its federal income tax return for the fiscal year ended March 31, 1954. This return shows that after taking all deductions authorized by law, except the charitable deduction authorized by sec. 162 (a), there was an income of $90,116.43 taxable to the fiduciary.

The complainant alleges in the tenth paragraph of the bill of complaint: "That on said income tax return, in computing the amount of income subject to tax, there was deducted from gross income pursuant to section 162 (a) of the Internal Revenue Code of 1939 the amount of $15,-770.38, as and being the portion of the undistributed income set aside for and belonging to the charitable organizations referred to in paragraph numbered (8) hereof." This amount was determined to be three and one-half twentieths, or 17.5 per cent, of said gross income of $90,116.43. There then remained as net income taxable to the fiduciary the amount of $74,346.05 ($90,116.43 minus $15,770.38). The executor computed the federal income tax on this sum to be

$46,635.27 and it paid that amount to the district director of internal revenue.

Thus there remains for ultimate distribution $43,481.16 ($90,116.43 minus the tax paid of $46,635.27). The question presented is: "Whether the estate's federal income tax for the fiscal year ended March 31, 1954 should be charged to income generally and deducted pro rata from the shares of all parties having an interest in the estate's income, or whether it should be deducted pro rata only from the shares of those parties whose portions of undistributed income are not deductible from gross income by the estate pursuant to section 162 (a) of the Internal Revenue Code of 1939."

Stated in another way the question is whether the ultimate tax burden shall be borne by all the owners of the residuary estate in proportion to their interests therein or only by the noncharitable group, since in determining the income tax payable a deduction was taken for the full amount of the charitable group's share of income.

The noncharitable group contends that the estate's federal income tax for the year in question should be charged to income generally and deducted pro rata from the shares of all the parties having an interest in the income of the estate and that it should not be deducted pro rata solely from the shares of those parties whose portions of undistributed income are not deductible from gross income pursuant to sec. 162 (a) of the 1939 Int. Rev. Code (53 Stat. 66). Accordingly the noncharitable group maintains that all of said balance of income, namely, $43,481.16, should be transferred to the residue intact, and that sixteen and one-half twentieths, or 82.5 per cent, amounting to $35,871.96, should be distributed to them and only three and one-half twentieths, or 17.5 per cent, namely, $7,609.20, be distributed to the charitable group.

On the other hand, the charitable group contends that no part of the estate's federal income tax should be charged to income generally or deducted pro rata from the shares of

all the parties having an interest in the income of the estate, and more particularly that no part of said income tax should be charged or allocated to the income of the charitable group. Accordingly they maintain that, because of the provisions of sec. 101 of the 1939 Int. Rev. Code (53 Stat. 33) which exempts charities from taxation, the charities should receive from said balance of $43,481.16 an amount equivalent to the $15,770.38, since that amount, being 17.5 per cent of $90,116.43, was deducted as an exemption before the executor paid the tax, and therefore such computation would properly leave $27,710.78 for distribution among the noncharitable group.

The question is really one of apportionment of federal *income* taxes on estates. There is no federal statute specifically dealing with apportionment of such income taxes in a case where gifts are made by will to noncharitable groups which are taxable and to charities which are exempt from taxation. Nor is there any state statute which deals with the problem of who should bear the tax burden in such a case. Therefore we shall have to determine the question before us without the help of any specific legislation, either state or federal.

This court has dealt with tax apportionment problems in several cases, but they related to federal *estate* taxes and not federal *income* taxes on estates. Furthermore, those cases arose from problems involving the apportionment of taxes in estates which consisted of property of the testator passing under his will together with other property which passed by the exercise of a power of appointment, *Hooker* v. *Drayton,* 69 R. I. 290; or together with other property which passed by the use of an *inter vivos* insurance trust, *Union Trust Co.* v. *Watson,* 76 R. I. 223; or together with other property passing under an *inter vivos* trust, *Industrial Trust Co.* v. *Budlong,* 77 R. I. 428. In the cases just mentioned the executor had to include in the federal estate tax return all the property of the testator as well as the

property which passed by the exercise of the power of appointment, or through the insurance trust, or by *inter vivos* trusts respectively. In those cases the court said that this was done only for the purpose of calculating the amount of the federal estate tax due, and an apportionment was there held to be proper because of the absence of a contrary testamentary direction.

As previously stated, the above cases involved *estate* tax problems, not *income* tax problems. Therefore, since there is no statute or decision directly governing the income tax problem before us, we shall first examine the will in order to ascertain whether the testatrix expressed her intent as to how and from what source the federal income tax should be paid where such tax accrues on the residue during the administration of her estate.

In the construction of a will the primary rule is that the intent of the testator, if ascertainable and lawful, must govern and that such intent must be ascertained if possible from a consideration of the whole will. It is also a fundamental rule that a testator is presumed to know the law and the natural consequences of his testamentary dispositions. In the instant case the testatrix made no specific direction in her will as to the payment of income taxes which might arise and become due from the estate during the administration thereof. However, the nature of the provisions and the language used in the will, when considered in the light of established federal income tax law, lead us to the conclusion that the testatrix did not intend that the charitable legacies in the residue of her estate should bear the burden of paying any of such income tax.

Ordinarily the income derived during the administration of an estate becomes part of the residuary estate. It has been held that during the period of administration of a decedent's estate there is no income tax whatsoever if charities take the entire residue. *Beggs* v. *United States,* 27 F.Supp. 599. Therefore if the entire residue under the instant will be-

longed to the charitable group, there would be no income tax thereon in view of sec. 162 (a) and sec. 101 (6) of the 1939 Int. Rev. Code (53 Stat. 66 and 33). Under the former section the entire amount would have been deductible from the gross income by the executor of the estate, and under the latter section there would be an exemption from taxation in so far as the gifts to the charitable group were concerned.

No convincing reason occurs to us why the same rule should not be followed as to taxes on charities where they take only a part of the residue. Moreover, this conclusion appears to be consistent with the principle stated in the case of *United States* v. *Benedict,* 338 U. S. 692. There the United States Supreme Court held that the purposes and intent of sec. 162 (a) of the Int. Rev. Code of 1939 (53 Stat. 66) are that the beneficiaries of charitable legacies shall receive them full and free of tax.

If the above rules and principles are applied to the instant case, the testatrix is presumed to have known that under the Int. Rev. Code of 1939, as above stated, her gifts to charities were entirely exempt from such taxation. Therefore, if she had intended that the charities bear a proportion of the tax she could easily have so provided, and it is reasonable to infer that she would have expressed such a contrary intention in clear and precise language.

In the absence of such a statement we think she intended her dispositions to be subject to the payment of taxes *only* to the extent that those gifts ordinarily would be taxable under the federal income tax law. The consequences of a contrary construction suggest a result inconsistent with the nature of a gift to charity and the incidence of the existing income tax law. It seems unreasonable to suppose that, although the testatrix presumably knew her charitable gifts were thus exempt from taxes, she nevertheless would intend to burden such charitable gifts with part payment of the taxes on other gifts which were taxable. Nor is it reasonable to infer from the nature of her gifts that she intended to

enrich the noncharitable group at the expense of the charitable group.

Our view is further strengthened by the fact that if the executor had paid or credited all of the income to the legatees during the tax year, the estate would have no income tax to pay according to the provisions of sec. 162 (c) of the 1939 Int. Rev. Code (53 Stat. 66). In such case the charities would not be required to pay a tax on their share of $15,-770.38 because of the provisions of sec. 101 (6) of the code.

Therefore from a reading of the entire will in the light of the language of those two sections, we are of the opinion that the testatrix did not intend to so penalize the charities because of the failure, for whatever reason, of the fiduciary to pay over the bequests during the taxable year. Nor did she intend in any way to diminish the shares which she had given to the charitable group and thus enrich the noncharitable group by subjecting to a portion of the tax the charitable gifts which were not taxable under the code and which had been deducted by the fiduciary in its return before the net tax was assessed.

We have examined the case of *In re Estate of Ginsberg,* 4 Ill. App. 2d 138, cited by certain respondents, and we do not agree with either the reasoning or the results as therein expressed. In the case at bar the income tax of $46,635.27 paid by the executor is based on the income of $74,346.05 charged exclusively to the noncharitable group. No income tax was paid on the share of the charities, namely, $15,-770.38, since this amount was previously deducted as a permitted charitable exemption from the gross income in the executor's return. In the circumstances we are of the opinion that the entire burden of the estate income tax should, be borne by the noncharitable group and that there should be no apportionment of that tax, since no part of the income set aside for the charitable group was intended to be included as part of the taxable income and none was included in the estate income tax return.

The parties may present to this court for approval a form of decree, in accordance with this opinion, for entry in the superior court.

*Tillinghast, Collins & Tanner, Thomas R. Wickersham,* for complainant.

*Fred A. Otis,* for certain respondents.

*Corcoran, Peckham & Hayes, Zalman D. Newman,* for other respondents.